UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY T. MORRIS,

                    Plaintiff,

v.                                                              Case No. 23-cv-11-pp

BRUCE BUEGE, STEVEN JOHNSON,
C. STEVENS, C. SCHMIDT,
SGT JONES and CO SABLE,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 9) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Anthony T. Morris, an individual incarcerated at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and for sanctions against the prison, dkt. no. 9, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2) and Motion for Sanctions for Failure to Comply with Court Order (Dkt. No. 9)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the

1

plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time through deductions from his prison trust account. Id.

On January 9, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $15.25. Dkt. No. 5. The court received that fee on January 24, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

On January 26, 2023, the court received from the plaintiff a motion for sanctions against Waupun for failing to fulfill the plaintiff's "numerous" requests to send the $15.25 initial partial filing fee to the court. Dkt. No. 9. The plaintiff says that Waupun "deliberately delayed" sending the payment despite him "providing them with the court order." Id. at 1. The plaintiff attached a request for information he filed with the prison on January 23, 2023, in which he requested a receipt from the business office showing payment of the fee. Dkt. No. 9-1 at 1. Prison staff responded, "[I]t's being done this week." Id.

Because the court has received the plaintiff's initial partial filing fee, the court will deny the plaintiff's motion for sanctions as moot. Mail and transactions between the prison and the outside world can take time to reach their destination. The court encourages the plaintiff to be patient with future filings in this lawsuit.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Food Service Administrator Bruce Buege, Food Service Manager C. Schmidt, Warden Steven Johnson, Deputy Warden C. Stevens, Sergeant Jones and Correctional Officer Sable. Dkt. No. 1 at 1. The complaint describes events that allegedly occurred while the plaintiff was incarcerated at the Milwaukee Secure Detention Facility (MSDF), where the defendants work. Id. at 3.

The plaintiff alleges that on June 26, 2022, while he was in the Restricted Housing Unit at MSDF, he was served a lunch meal that included carrots contaminated with rodent feces. Id. The plaintiff says that upon discovering that he had "eaten Rodent Feces," he alerted staff by using his emergency intercom. Id. Lieutenant Ricks and Nurse Miller (who are not defendants) responded to the plaintiff, examined the remains on his lunch tray and "matched it with [G]oogle images of Rodent Feces and Found it to be

consistent." Id. Ricks took photos and Miller provided medical attention, though the plaintiff says he was not yet "experiencing any symptoms . . . because it had just happened." Id. Miller told the plaintiff "to report to staff if [his] condition changed." Id.

The plaintiff alleges that the next day—June 27, 2022—Sergeant Jones and Officer Sable denied him medical attention. Id. When the plaintiff asked Jones for medical attention, the sergeant told him "to fill out a blue slip." Id. The plaintiff says Jones knew he had consumed rodent feces the previous day "because he was the sgt [the plaintiff] had alerted via intercom on 6-26-22." Id. The plaintiff told Sable that he had consumed the contaminated food the previous day and was having "extreme stomach pains," but Sable "told [him] to stop crying and that a little mice shit never killed anybody and walked off." Id. The plaintiff says he wrote numerous requests for medical attention, but his requests "were never picked up and [his] medical need went ignored." Id. He says that for six days, he experienced "extreme stomach pains and cramps, [a]nd vomiting and fever and diarreah [*sic*]." Id. Ricks sent the pictures he had taken of the feces to food administrator Buege and food service manager Schmidt, but Buege said that the feces "never come from his kitchen." Id. at 3–4.

The plaintiff asserts that Buege and Schmidt violated his rights under the Eighth Amendment by failing to provide him "nutritionally adequate food that is prepared and serve[d] under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."

5

Id. at 4. He says they knew about "a serious rodent problem" in the kitchen because "there have been complaints before about rodent feces contaminating the food and trays." Id. The plaintiff alleges that Buege and Schmidt ignored the problem and the complaints, and "and failed to provide sufficient solutions to abate this problem which led [him] to consuming rodent feces." Id.

The plaintiff asserts that Jones and Sable knew he had ingested the rodent feces but failed to provide him adequate medical attention. Id. He asserts that Warden Johnson and Deputy Warden Stevens knew about the rodent problem but "went along with the conditions which posed an unreasonable risk of serious damage to [his] future health." Id. The plaintiff says that since this incident, he has begun taking medication for depression, anxiety and difficulty sleeping. Id. He says the incident affected his "mental ps[y]che" and increased his "mental health code level from 0 to 1." Id. The plaintiff seeks compensatory and punitive damages from the defendants totaling $18 million. Id. at 4–5.

C.  Analysis

The plaintiff's allegations regarding inadequate medical care and the conditions of his confinement amount to claims of deliberate indifference. The court analyzes these claims under the Eighth Amendment, which imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official "who fails to uphold these duties violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to

6

an inmate.'" Thomas v. Blackard, 2 F.4th 716, 719 (7th Cir. 2021) (quoting Farmer, 511 U.S. at 828). Regardless of the type of deliberate indifference claim the plaintiff raises, the deprivation he alleges "must be, objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The plaintiff also must demonstrate that prison officials subjectively knew of an excessive risk of harm to his health or safety and disregarded that risk. Id. at 837; Perez, 792 F.3d at 776. Only "extreme deprivations" amount to cruel and unusual conditions of confinement. Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

The plaintiff alleges that on a single day in June 2022, the prison served him food that was contaminated with rodent feces. He says he consumed the food, became ill and suffered physical symptoms for six days without medical treatment. He says the incident caused mental-health issues and difficulty sleeping, for which he now takes medication. The plaintiff faults prison officials, whom he says knew about rodent issues in the kitchen but failed to take proper action to remedy the problem.

This complaint is similar to another the court recently reviewed in a different prisoner case. See Olrich v. Kenosha County, No. 18-cv-1980-pp, 2020 WL 1169959 (E.D. Wis. Mar. 11, 2020). The plaintiff in Olrich was incarcerated at the Kenosha County Jail when he and other prisoners consumed spoiled meat and became ill. Id. at *2. He alleged that one day he "became so sick that he was throwing up and unable to keep down food." Id. The plaintiff told a correctional officer, who told him "to 'deal with it.'" Id.

(quoting Plaintiff's Complaint at 5). A corporal told the plaintiff he might have food poisoning but that "he couldn't do anything and advised him to file a grievance." Id. The plaintiff asserted that the corporal "could have called a nurse or other medical personnel to see him but did not do so." Id. The plaintiff filed a grievance, and food services admitted the meat he consumed was spoiled. Id.

The court reviewed the Olrich plaintiff's claims under the Eighth Amendment, explaining that allegations about occasional instances of food contamination in a prison "will not support a claim of deliberate indifference to conditions of confinement." Id. at *3 (citing cases, including Franklin v. True, 76 F.3d 381 (7th Cir. 1996) (unpublished) (concluding that one instance of food poisoning was insufficient to state an Eighth Amendment claim about the conditions of the plaintiff's confinement)). The court noted, however, that an allegation "that prison officials knew of a pattern of inmates being injured by bad food and did not[hing] to remedy the problem" may state a viable claim of deliberate indifference. Id. (citing Green v. Beth, 663 F. App'x 471, 472 (7th Cir. 2016)). The plaintiff in Olrich did not explain how many times he had been served spoiled meat, who fed it to him, how frequently incarcerated persons became ill or whether he told anyone other than the officers about the spoiled meat. Id. The court found that his allegations did not state a claim under the Eighth Amendment because he alleged only that he got sick on one occasion and told officers only that he "'may have food poisoning.'" Id. The court explained that those allegations alone did not "show that the plaintiff had an

objectively, sufficiently serious medical condition such that [the corporal] violated his constitutional rights by doing nothing more than telling the plaintiff to file a grievance." Id. The court did not allow the plaintiff to proceed on his complaint, but it afforded the plaintiff an opportunity to file an amended complaint to provide additional information about his claims. Id. at *5.

The court's analysis of the complaint in this case is the same as its analysis in Olrich. The complaint alleges that Jones and Sable were aware that the plaintiff consumed food contaminated with rodent feces because he informed them about it either the day he consumed the tainted food or the next day, when he became ill. The plaintiff says he told both defendants he needed medical attention and told Sable he was experiencing stomach pains. Jones told the plaintiff to "file a blue slip;" the court is aware that a "blue slip" is the form an incarcerated person files to request medical attention. Sable did less, allegedly telling the plaintiff "to stop crying." The plaintiff filed blue slips to request medical attention, but the slips "were never picked up." The plaintiff does not say whether Jones or Sable were the officers responsible for picking up the plaintiff's blue slips. The plaintiff says he suffered from stomach pain and cramps, vomiting, fever and diarrhea for six days.

These allegations are "not enough to show that the plaintiff had an objectively, sufficiently serious medical condition such that [Jones and Sable] violated his constitutional rights by doing nothing more than telling the plaintiff to file a grievance." Olrich, 2020 WL 1169959, at *3. The allegations show instead that the plaintiff did not feel well and told one of the defendants

9

about his stomach pain, and that that defendant told him to request medical attention, which the plaintiff did. The plaintiff has not alleged that Jones and Sable are medical professionals, and the plaintiff has not explained what more he wanted them to do. To proceed on a claim that Jones and Sable were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, the plaintiff "must allege that he had an objectively serious medical need, and that particular defendants were aware of that need but were deliberately indifferent to it." Id.

 Nor does the complaint state a claim against Buege and Schmidt, the Food Service Manager and Administrator at MSDF. The complaint alleges that the plaintiff received contaminated food only once and fell ill because of it. A single instance of contaminated food is insufficient to state a claim of deliberate indifference. See id. (citing Franklin, 76 F.3d 381, and George v. King, 837 F.2d 705, 707 (5th Cir. 1988)). The plaintiff alleges that other incarcerated persons complained about contaminated food or rodent droppings on their food trays. He says Buege and Schmidt were aware of the issue and the past complaints but failed to solve or even address the problem. But he does not say how often incarcerated persons have complained about the issue or how many others became ill. If the issue has occurred only occasionally or infrequently—say, a few times per year—the plaintiff cannot state an Eighth Amendment claim against Buege and Schmidt. See id. (citing cases). But if the issue has been "ongoing," and Buege and Schmidt know that other incarcerated persons frequently complain about the issue or fall ill because of contaminated food,

they may have deliberately disregarded the risk to the plaintiff's health or safety by not acting sooner. Id. (citing Green, 663 F. App'x at 472).

The plaintiff also has not stated a claim against Warden Johnson and Deputy Warden Stevens. The Warden and Deputy Warden cannot be held liable merely because they hold supervisory positions at the prison. "'To show that a supervisor is liable under §1983, a plaintiff must show that the supervisor was 'personally responsible for the deprivation of the constitutional right.'" Olrich, 2020 WL 1169959, at *4 (quoting Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) (internal quotation omitted)). "'To show personal involvement, the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" Id. (quoting Matthews, 675 F.3d at 708 (internal quotation omitted)). The complaint alleges that Johnson and Stevens *were* aware of the problems in the kitchen with rodents and rodent feces, but that they disregarded and "went along with" those conditions. That may be enough to hold those defendants accountable. But, again, the plaintiff does not explain how often the problems occurred, how often the Warden and Deputy Warden were told about the issues or whether they should have acted sooner. To proceed on a claim against these defendants, the plaintiff must provide more information about his claim—how many incarcerated persons became ill from rodent feces on food trays? How often did that occur? How often did incarcerated persons complain about the food? Were the defendants aware of how often incarcerated persons became ill or complained about the food?

The court concludes that the complaint currently before the court does not state a claim. But with additional detail, the plaintiff might be able to state Eighth Amendment claims against the defendants. The court will give the plaintiff an opportunity to amend his complaint and provide additional detail, as explained in this order.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. In particular, the plaintiff should explain how frequently incarcerated persons have complained about rodent feces in food, and to whom; how frequently he has been served

contaminated food (two times in a year? Ten times in a year? Only once?); and why he believes each defendant he sues was aware of the contamination problem.

The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for sanctions for failure to comply with court order. Dkt. No. 9.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **April 14, 2023**. If the plaintiff files an amended complaint in time for the court to *receive* it by the end of the day on April 14, 2023, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on April 14, 2023, the court will dismiss this case based on the plaintiff's failure to state a

claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$319.50** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 10th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**