UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY T. MORRIS,

           Plaintiff,

v.                                                      Case No. 23-cv-11-pp

BRUCE BUEGE, STEVEN JOHNSON,
CHRIS STEVENS, CHRIS SCHMIDT,
SGT JONES and CO SABLE,

           Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 11)
UNDER 28 U.S.C. §1915A**

On March 10, 2023, the court issued an order screening plaintiff Anthony T. Morris's complaint (he is representing himself) under 42 U.S.C. §1983 and concluding that it failed to state a claim. Dkt. No. 10. The court gave the plaintiff "an opportunity to amend his complaint and provide additional detail" about his claims. Id. at 12. On March 24, 2023, the court received the plaintiff's amended complaint. Dkt. No. 11. This order screens that amended complaint.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that

1

Case 2:23-cv-00011-PP   Filed 06/13/23   Page 1 of 10   Document 12

are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names the same six defendants as the original complaint: Food Service Administrator Bruce Buege, Food Service Manager Chris Schmidt (previously identified only as "C. Schmidt"), Warden Steven Johnson, Deputy Warden Chris Stevens (previously identified only as "C. Stevens"), Sergeant Jones and Correctional Officer Sable. Dkt. No. 11 at 1. Like the original complaint, the amended complaint describes events that allegedly occurred while the plaintiff was incarcerated at the Milwaukee Secure Detention Facility (MSDF), where the defendants work. Id. at 2.

The plaintiff's allegations mirror those in his original complaint. He says that from June 16 to 26, 2022, two out of the three food trays he received each day were "contaminated with mice droppings." Id. at 3. When he complained to unspecified prison staff, they told him to tell the kitchen supervisor about the issue "because the situation was out of their scope." Id. The plaintiff says he wrote to Schmidt, Buege, Stevens and Johnson about the issue six times, but "nothing was done." Id. He says "other inmates" also sent complaints to the same defendants about the issue three times, but received no response. Id.

The plaintiff alleges that on June 26, 2022, he "consumed a lunch tray that was contaminated with mice droppings." Id. He alerted Jones, and a non-defendant correctional officer came to his cell to inspect his food tray. Id. A non-defendant lieutenant and nurse also came to his cell, photographed his

3
Case 2:23-cv-00011-PP   Filed 06/13/23   Page 3 of 10   Document 12

food tray and matched the pictures with "[G]oogle images of mice dropping[s]." Id. The nurse treated the plaintiff, who was not having any symptoms at the time "because it had just happen[ed]." Id. The nurse told the plaintiff to tell staff if his condition changed. Id. He also told the plaintiff that two other prisoners had been treated for consuming food contaminated with mice droppings a week earlier, and that there had been "an ongoing problem with the rodent infestation of the kitchen area for quite some time." Id.

The plaintiff alleges that the next day—June 27, 2022—he asked Officer Sable to call for medical assistance for stomach pains he was experiencing. Id. at 3–4. Sable allegedly responded, "stop crying a little rat shit never killed anybody," and walked off. Id. at 4. The plaintiff then told Jones about his stomach pains and asked her to call medical staff, as Nurse Miller had told the plaintiff to do. Id. The plaintiff says Jones ignored him, and the plaintiff spent six days suffering from cramps, vomiting, fever and diarrhea. Id. The plaintiff alleges that Sable and Jones failed to contact medical staff about his symptoms, even though Nurse Miller had told both that he consumed the contaminated food and that they should contact medical staff if his condition changed. Id.

The plaintiff alleges that Buege and Schmidt failed to provide him nutritionally adequate and safe food. Id. He says both defendants told an institutional complaint examiner that they were aware of the issue with contaminated food, but they failed to resolve the issue and prevent him from consuming the contaminated food and becoming ill. Id. at 4–5. He says both

4

Buege and Schmidt knew that he and at least two other prisoners had complained about becoming sick from eating contaminated food, but that they failed "to abate the problem when they were made aware of it." Id. at 5. The plaintiff says Warden Johnson and Deputy Warden Stevens likewise admitted to a complaint examiner that the plaintiff and other incarcerated persons had complained about the contaminated food trays, but they "went along with these conditions and turned a blind eye to all the complaints." Id.

The plaintiff alleges that "this incident has affected [his] ps[y]che by increasing [his] mental health code from 0 to 1," which has caused him "to be put on medication for depression, anxiety, and isomia [*sic*]." Id. He says he stopped eating for five days after becoming ill to avoid again consuming mice feces. Id. at 5–6. He reported the issue to psychological staff at the prison, also "to no avail." Id. at 6. He asked staff to provide him bagged meals instead of food trays, but his request was ignored. Id. He says "nothing was done to fix the problem, and [he] was forced to eat the food contaminated by rodent feces" until he was transferred to Waupun Correctional Institution. Id. The plaintiff seeks compensatory and punitive damages from the defendants totaling $19 million. Id. at 7.

C. Analysis

The court explained in the previous order that the plaintiff's allegations regarding his inadequate medical care and the conditions of his confinement amount to claims of deliberate indifference, which the court analyzes under the Eighth Amendment. Dkt. No. 10 at 6. The Eighth Amendment imposes a duty

5

on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official "who fails to uphold these duties violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" Thomas v. Blackard, 2 F.4th 716, 719 (7th Cir. 2021) (quoting Farmer, 511 U.S. at 828). Regardless of the type of deliberate indifference claim the plaintiff raises, the deprivation he alleges "must be, objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The plaintiff also must demonstrate that prison officials subjectively knew of an excessive risk of harm to his health or safety and disregarded that risk. Id. at 837; Perez, 792 F.3d at 776. Only "extreme deprivations" amount to cruel and unusual conditions of confinement. Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

The original complaint alleged that the plaintiff was served contaminated food only once—on June 26, 2022—which caused him to become ill. The court explained that those allegations were like the allegations from another recent case that had come before this court, citing Olrich v. Kenosha Cty., No. 18-cv-1980-pp, 2020 WL 1169959 (E.D. Wis. Mar. 11, 2020)). As in Olrich, the court concluded that the allegations in the original complaint were "'not enough to show that the plaintiff had an objectively, sufficiently serious medical condition such that [Jones and Sable] violated his constitutional rights by doing nothing more than telling the plaintiff to file a grievance.'" Id. at 9 (quoting Olrich, 2020 WL 1169959, at *3). The court explained that the plaintiff had not alleged that

Jones and Sable are medical professionals or that they were aware of, but disregarded, his objectively serious medical need. Id. at 9–10. The court further explained that the plaintiff's allegations that he "received contaminated food only once and fell ill because of it" did not state a claim against Buege and Schmidt. Id. at 10.

The amended complaint clearly lifted some legal terminology from the court's previous order. For example, the amended complaint says the defendants "acted with deliberate indifference to an [*sic*] substantial risk of harm to an inmate health and wellbeing." Dkt. No. 11 at 4. That is an almost verbatim quote from the court's order. See Dkt. No. 10 at 6–7 (explaining that a prison official violates the Eighth Amendment "upon exhibiting deliberate indifference to a substantial risk of serious harm to an inmate." (quotation omitted)). The amended complaint later asserts that wardens Stevens and Johnson "turned a blind eye" to his complaints about the food trays. Dkt. No. 11 at 5; compare to Dkt. No. 10 at 11 (explaining that supervisors, like the warden and deputy warden, may be liable only if the plaintiff shows they "know about the conduct and facilitate it, approve it, condone it, or *turn a blind eye* for fear of what they might see." (quotation omitted; emphasis added)). Adding this legal terminology does not transform the insufficient allegations from the original complaint into sufficient claims. The court has an obligation to treat factual allegations as true; but it is not required to treat legal conclusions as true. See Iqbal, 556 U.S. at 678–79 (citing Twombly, 550 U.S. at 555).

But the amended complaint also provides additional factual details. The plaintiff now says that he received contaminated food trays for two out of three meals for ten days prior to becoming ill from consuming food on the contaminated tray on June 26, 2022. He says he repeatedly complained about his food trays to Buege, Schmidt, Stevens and Johnson. He says other incarcerated persons also repeatedly complained to those defendants about becoming ill from consuming contaminated food trays, but that the defendants failed to take any action to resolve the problem. The plaintiff says a nurse told him it was a known, ongoing problem and described it as "the rodent infestation of the kitchen area." He says Sable and Jones knew the plaintiff had consumed contaminated food on June 26, 2022, because the nurse told them the plaintiff might start experiencing symptoms. He says the nurse told Jones and Sable to alert medical staff if the plaintiff expressed feeling ill. The plaintiff did become ill the next day—June 27, 2022—but Sable and Jones did nothing when he asked for medical attention. The plaintiff says he suffered physical symptoms for six days, stopped eating for five days out of concern of consuming more contaminated food and suffered psychological symptoms as a result. Accepting these factual allegations as true, the court finds that the plaintiff now has stated an Eighth Amendment claim against Sable, Jones, Buege and Schmidt for being aware of the rodent problem in the kitchen—and of the plaintiff's specific instances of receiving or consuming contaminated food—and disregarding the issue by failing to take any corrective action. Those

allegations sufficiently state a claim of deliberate indifference against those defendants.

The allegations against Warden Johnson and Deputy Warden Stevens are a closer call. Like the original complaint, the amended complaint alleges that the wardens were aware of and "went along with" the kitchen and food conditions. Dkt. No. 11 at 5. But the plaintiff now adds that he complained abut the issue several times before becoming ill on June 26, 2022 by sending the wardens request slips about the issue. He also says that Johnson and Stevens admitted to a complaint examiner that they knew about the problem because the plaintiff "had complained to them numerous times," and that at least two other incarcerated persons had complained about the issue before him. Id. These allegations suggest that the wardens not only knew about the problem, but they also approved or condoned it by repeatedly ignoring (or turning "a blind eye" to) the issue. Dkt. No. 10 at 11 (quoting Olrich, 2020 WL 1169959, at *4). The court will allow the plaintiff to proceed on an Eighth Amendment claim against Johnson and Stevens.

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Bruce Buege, Chris Schmidt, Steven Johnson, Chris Stevens, Sergeant Jones and Correctional Officer Sable at the Milwaukee Secure Detention Facility. Under the informal service agreement, the court

9
Case 2:23-cv-00011-PP   Filed 06/13/23   Page 9 of 10   Document 12

**ORDERS** those defendants to respond to the amended complaint within 60 days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court reminds the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court reminds the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 13th day of June, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**